EDMOND A. HUGHES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. B. LITTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44113, 61821. Promulgated March 24, 1933.

*Lloyd B. Anderson, Esq.*, for the petitioners.
*J. A. Lyons, Esq.*, and *B. M. Coon, Esq.*, for the respondent.

OPINION.

LANSDON: The petitioners contend that their advances in cash and property to the Beulah Coal Mining Company during its operations constituted bad debts which were ascertained to be worthless in 1924. As the basis for his determination in respect of this issue, the respondent contends, first, that the petitioners suffered no deductible loss in their transactions with the Beulah Company; and, second, that, even if that corporation's obligations to them could at any time

have been considered in the category of bad debts, in the circumstances the time of the ascertainment of worthlessness must have been prior to 1924.

We think the record supports both theories advanced by the respondent. Respecting the first, the petitioners have not adduced proof convincing to us that they ultimately lost the whole, or even part of their outlays made in their operations through the Beulah Company, which they here claim were debts which were ascertained to be worthless in 1924.

The petitioners' advances to the Beulah Company were made prior to October 1922, when they closed it down and began using its plant and equipment in their partnership operations. They did this under a lease which provided for certain compensation to the Beulah Company for the use of the property, but no accounting was made to it for such use and the record shows that they paid nothing on such account. If such use had any value whatever the corporation was entitled to a credit against any indebtedness the petitioners held against it. The fact that the partnership used this plant and other assets for more than a year and thereby was enabled to develop the mining properties and mines which it delivered as a going business to the corporation succeeding it is evidence to us that such use was valuable. What that value was we are unable to say in the absence of proof. Conceivably to the petitioners it may have exceeded the amount in dispute, inasmuch as by use of the equipment and other assets held over by them from the Beulah Company they were enabled to organize their new corporation without capital expenditures or any interruption of their mining business.

Other facts shown in the record to our mind tend to support either or both of two theories which are fatal to the petitioner's contention, viz: (1) that the petitioners determined these alleged bad debts worthless and lost to them not later than December 31, 1923, and/or (2) that their claims on that date were taken over and assumed by the corporation. An abstract of the account of the Beulah Company with the partnership which was put in evidence shows that on December 31, 1923, the partnership balanced the account with a closing credit entry of $104,375.69, the amount now claimed as a bad debt, which it charged to surplus. These books and all other partnership accounts were taken over by the corporation and adopted by it as its own. Although the exhibit introduced by petitioners showing the successive transfers of these accounts, first to the partnership and last to the corporation, was not explained, it indicates that the partnership and the corporation in the order stated each assumed the payment of the obligations here in issue and that they were written off as losses of the corporation at the close of the year 1923. In any event the petitioners have not convinced us that the respondent erred

in denying the deductions of the petitioners claimed for them in 1924, and his acts are approved. Since the record fails to disclose that advances made by petitioners to the Beulah Company became worthless debts at any time or that any loss was sustained therefrom, the alternative contention that, if the Board should find the debts worthless in 1922 or 1923, net losses applicable to income tax liability for 1924 resulted, need not be considered.

Other assignments of error urged in the appeal of petitioner Little at Docket No. 61821 remain to be considered. The petitioner gave his individual promissory note for $10,000 and paid $99.17 in interest to a bank in discharge of a note for $10,000 upon which he was bound as indorser for one Twitchell, an insolvent maker. He claimed the amount of this note as a bad debt deductible from his income in 1924. This Board and the courts have held that the giving of a note in the circumstances shown and where the maker thereof keeps his accounts and makes his income tax return on the cash receipts and disbursements basis does not result in a deductible loss until such note is paid in cash and by such holding we are bound. *United States* v. *Mitchell*, 271 U. S. 9; *Eckert* v. *Burnet*, 283 U. S. 140. The payment of $99.17 for interest constitutes a deductible claim and will be allowed; all in excess of such sum will be disallowed.

We are unable to find proved facts in the record to sustain petitioner Little's claims of losses from his investments in the Kelly Springfield Truck Company and Goodridge-Call Lumber Company stocks, which securities he contends became worthless in 1924. Little testified at the hearing that he paid $19,600 for his Kelly Springfield stock, but the only evidence introduced as to the value of such stock in the taxable year consists of copies of correspondence and an unverified copy of an alleged financial statement purporting to show the condition of that corporation as of December 16, 1922. There is nothing to show that such stock was valueless in 1924 or at any other time. The document or statement if accorded probative value at all would support the theory that the corporation was insolvent in 1922, which facts the petitioner must have known. We hold, therefore, that the petitioner has failed to sustain the burden of showing that the respondent erred in denying the deduction in the year claimed.

Little's stock holdings in the Goodridge-Call Lumber Company were acquired at different times prior to March 1, 1913, part by purchase at par and part through stock dividends to him. He claims that his 196 shares of this stock had a fair market value on March 1, 1913, of $21,797.16 and that they became worthless in 1924. No testimony of witnesses who pretended to know the fair value of this stock on March 1, 1913, or its lack of value in 1924, was introduced at the hearing of these appeals. The petitioner however introduced in evidence a letter received by his agent in October 1928, with a

statement purporting to show the book value of that stock on March 1, 1913. This letter and statement are incompetent and without probative force. The same may be said of a great mass of other miscellaneous hearsay memoranda put in evidence which merely reflect the opinions of parties not under oath or present for cross examination before the Board. For lack of proof showing error we sustain the act of the respondent in denying this claim.

Since we are unable to find that petitioner Little sustained any losses in connection with the stock transactions above discussed, it is unnecessary to consider the alternative claim that such losses if sustained in prior years resulted in net losses applicable to income tax liability in 1924.

The remaining assignments of error, which relate to deductions claimed by petitioner Little, were abandoned at the hearing and the acts of the respondent in denying them are therefore approved.

Little has neither denied the items of income which the respondent found were omitted from his income tax return for 1924, nor offered any satisfactory explanation for such omissions. There is ample proof in the record to justify the imposition of the negligence penalty, which, under the facts shown, was mandatory under section 275 (a) of the Revenue Act of 1924. These penalties are therefore affirmed.

No evidence in respect of the deficiency asserted against Little for 1925 was adduced. The determination of the respondent thereto is affirmed.

*In Docket No. 44113 decision will be entered for the respondent. In Docket No. 61821 decision will be entered under Rule 50.*