### COMMISSIONER OF INTERNAL REVENUE v. CENTRAL REPUBLIC TRUST CO.

### SAME v. McKEY.

#### Nos. 5340, 5359.

Circuit Court of Appeals, Seventh Circuit.

Feb. 23, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Arnold Raum, Sp. Assts. to Atty. Gen., for petitioner.

Paul E. Shorb, of Washington, D. C., and Richard Yates Hoffman and Martin Solomon, both of Chicago, Ill., for respondent.

Before EVANS and FITZHENRY, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner in No. 5340 seeks to review a decision of the United States Board of Tax Appeals affecting the respondent's income taxes for 1920 and 1928. The taxpayer was a bank, a substantial part of its business being the making of loans secured by real estate mortgages. The bank took from each borrower the security of a real estate mortgage and charged the borrower not only interest upon the loan, but a so-called "commission," "discount," or "underwriting fee," varying from 1 per cent. to 11 per cent. of the principal, which was deducted from the face amount of the loan. The balance was paid to the borrower. The loans were so prepared as to facilitate their ready negotiation and sale and the taxpayer resold the notes or bonds, secured as aforesaid, as soon as possible after each transaction had been completed. The bank maintained a sales department to promote sales, published prospectuses and lists of its offerings, handled the general advertising, and employed a number of salesmen. It did not know in advance how soon or for how much it could sell such loans to investors. Some of the loans it was not able to dispose of and retained as its own property.

The taxpayer, for the year 1928, keeping its books upon a cash basis, did not account for the unrealized amounts of this so-called commission. For the year 1920 it treated 50 per cent. of the commissions as realized profits and carried the other 50 per cent. as

a deferred item to be accounted for when realized in cash.

The commissioner sought to charge the amount of such commissions as a part of the annual gross income for each of those years, irrespective of how much of the same had been realized in cash. The Board held that inasmuch as the taxpayer kept its books upon a cash basis, it had properly accounted for the items, in reporting only such part of the commissions as had been realized in cash during the year. The correctness of that ruling is the only question submitted.

In two cases the precise question has been decided adversely to the contention of petitioner. In Blair v. First Trust & Savings Bank, 39 F.(2d) 462 (C. C. A. 5) March 25, 1930, in deciding a similar question, the court said: "It is plain that until the loan is paid or rediscounted the respondent has earned no profit, but has simply parted with its funds on the faith of the security. The commission is not actually received until respondent gets back what it has previously paid out plus the commission. The deduction of the commission from the face of the loan brings nothing into the coffers of the bank."

Certiorari was denied by the Supreme Court on October 13, 1930, Burnet v. First Trust & Savings Bank, 282 U. S. 851, 51 S. Ct. 29, 75 L. Ed. 754.

In Helvering v. Martin-Stubblefield Inc., 71 F.(2d) 944 (C. C. A. 8) meeting a similar situation, the court said:

"The Board of Tax Appeals held that the Commissioner erred in increasing respondent's gross income by the amount of the commissions here in controversy, and redetermined the tax liability for the years 1927 and 1928 accordingly. The sole question presented is whether the commissions so deducted when the loans are made constitute taxable income as of that year. * * *

"It is evident that income from this source is uncertain until the notes are paid or sold before maturity. The evidence establishes that it was respondent's practice to rediscount these notes before the loans matured. It seems clear, therefore, that the income actually earned could not be definitely ascertained at the time the loan was made, but only when the loan was actually repaid or the notes were sold."

We are in thorough accord with the reasoning of these cases.

It is argued by the petitioner that the case is within Columbia State Savings Bank v. Commissioner, 41 F.(2d) 923, 924 and Rusk v. Commissioner, 53 F.(2d) 428, heretofore decided by this court.

In the first of these cases the court had before it a question similar to that here presented, except that the taxpayer there was keeping its books upon an accrual basis, and Judge Alschuler distinguished the case of Blair v. First Trust & Savings Bank, supra, by saying that the case is "clearly distinguishable by the there recited fact that 'respondent keeps its books and makes its returns on the cash basis.' And, further, as stated by the Board of Tax Appeals in passing on that case, the taxpayer's books treated the commission as unearned until such time as the notes were paid or sold." The facts here are in accord with those of the Blair Case, rather than those of the Columbia Case.

In the second of said cases, it will be observed, the court was dealing with a sale of property and the effect of the decision was that in making a sale, a promissory note secured by a mortgage, accepted as payment, should be treated as the equivalent of cash received at the time of the sale and accounted for during the taxable year.

It is obvious that the present situation does not present a case involving the liability to account for notes received in payment of the purchase price of property sold, as the equivalent of cash. The present case does not have to do with the sale of property. Rather, in each instance, the taxpayer made an investment. It acquired a security by the delivery of a certain amount of money. Its transaction was more nearly in effect a purchase than a sale, and the situation is not far foreign to that where a merchant invests in merchandise and has no realized profit until he disposes of the merchandise thus acquired. So, here, the taxpayer invested in certain securities; it acquired the securities. In due course of time it sold the same, but until it sold and received payment it could not determine what its profits might be. It dealt in securities and expended moneys for advertising, salesmen, and administrative purposes in making sales, and in the end realized such profit, if any, as resulted after the deduction of costs of making sales. Logically the case is akin to that which was before the court in New York Life Insurance Company v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 437, 70 L. Ed. 859, where the court said: "The result of the venture could

not be known until they [the bonds, payable at future dates] were either sold or paid off."

In case No. 5359 the question presented is exactly that as presented in No. 5340, with reference to the year of 1920.

Accordingly, the decision of the Board of Tax Appeals in each of the cases will be affirmed.