**DARBY INVESTMENT CORPORATION,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 15017.

United States Court of Appeals
Sixth Circuit.

April 9, 1963.

Dale E. Andrews, Flint, Mich., Frank C. Smith (Deceased), Flint, Mich., on brief, for petitioner.

Norman H. Wolfe, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attorneys, Department of Justice, Washington, D. C., on brief, for respondent.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.

PER CURIAM.

Darby Investment Corporation petitions this Court for a review of the decision of the Tax Court of the United States redetermining deficiencies in its income taxes for its fiscal years ending

August 31, 1956 and 1957. The taxpayer is a corporation organized under the laws of the state of Michigan and during the time pertinent to this case was engaged in the business of buying land contracts at a discount in Michigan.

Seventy-six contracts are involved here which were purchased by the petitioner during its fiscal years 1956 and 1957. Approximately ninety percent of these contracts were purchased from builders and in each case the builder had erected a "shell house" on the land which was the subject of the contract. A "shell house" was one in which the inside was unfinished. The house would be sold by the builder with certain materials and equipment included to be used by the purchaser for its completion. It was generally provided in the contracts that the house must be completed within a year.

The vendee of one of these houses would buy on contract with provisions for a small down payment and for monthly payments to be made on the balance until the entire purchase price was paid. The unpaid balance of the principal bore interest at six percent and the interest was included in the monthly payments. The builder would retain legal title to the land.

Generally, after one or two monthly payments were made, the builder would sell the contract to the petitioner. The price paid was an agreed percentage less than the principal amount due on the contract. This difference is the discount income which is the subject of this controversy. The percentage of discount on these contracts varied with different transactions but generally ran from 25% to 27%. The builder would give the petitioner a deed for the land and it would then hold the legal title until the purchase price was fully paid, or until the home purchaser could pay it off by getting a conventional loan from a financial institution. On an average these "shell houses" when completed were worth twenty-nine percent more than their fair market cash value as "shells."

The other ten percent of the land contracts involved were those covering used homes from twenty to thirty years old. They were purchased from individuals at discounts of from ten to twenty-three percent. These homes were in more stable neighborhoods and had more readily predictable cash values than was true of the "shell houses."

The parties stipulated certain facts and the pertinent facts are fully set forth in the opinion of the Tax Court, reported at 37 T.C. 839.

The sole issue is whether the petitioner must include as income received with each monthly payment under the contracts, in addition to interest, realized discount income in proportion to the difference between the petitioner's cost and the principal balance due upon the face of such contracts at the date of their purchase. The petitioner performed no services other than financing, through the purchase of contracts. The amount received in payment on the principal in excess of the cost of the contract is conceded to be ordinary income.

The Commissioner contends that the taxpayer must report each year as income a proportionate part of each monthly payment as realized discount income. In other words, each monthly payment represents interest, recovery of cost and discount income. The taxpayer claims that it should be permitted to recover its cost before it is required to return any portion of the monthly payments as realized discount income.

The discount income in dispute for the fiscal year 1956 is $5928.21 and for the fiscal year 1957 it is $8011.05. Tax deficiencies were assessed for the taxable years ended August 31, 1956 and 1957 in the respective amounts of $1778.46 and $2427.21. The Tax Court sustained the deficiencies as assessed by the Commissioner.

Determination of the issue turns on the question of whether the investment in the contracts is of such a speculative nature that the purchaser, the petitioner herein, cannot be reasonably certain of ever recovering his cost. Burnet, Commissioner of Internal Revenue v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143.

From the stipulation of facts and from the oral testimony, the Tax Court made findings of facts as follows: that for many years contracts of the nature here involved had been assigned, sold, purchased and freely transferred in the state of Michigan; that there was a ready market for their sale or purchase; that the fair market value of each of the land contracts herein was equal to the petitioner's cost of that contract; that the contracts were readily salable to an existing market; and that the petitioner was amply secured as to the recovery of its cost, except as to ordinary business risks.

There is substantial evidence to support these findings of fact and they are not clearly erroneous. This Court is bound by the trial court's findings of fact, if they are not clearly erroneous. Rule 52(a), Federal Rules Civil Procedure; Commissioner v. Duberstein, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S. Ct. 525, 92 L.Ed. 746; Kreis v. Commissioner, 227 F.2d 753, 755, C.A.6.

From these facts we conclude that the petitioner can be reasonably assured of recovering its costs of the contracts not only in accordance with their terms but in many instances in less time than is specified in the contracts. As indicated in the Tax Court opinion, many contracts are paid off by conventional loans. The taxpayer, then, must return each year as income the proportionate amount of each monthly payment that represents discount income. See Hatch v. Commissioner of Internal Revenue, 190 F.2d 254, C.A.2; Shafpa Realty Corporation v. Commissioner of Internal Revenue, 8 B.T.A. 283; Vancoh Realty Company v. Commissioner of Internal Revenue, 33 B.T.A. 918; First Kentucky Company v. Gray, 309 F.2d 845, C.A.6.

Phillips v. Frank, 295 F.2d 629, C.A.9, and Willhoit v. Commissioner of Internal Revenue, 308 F.2d 259, C.A.9, relied on by the petitioner both involve investments of a highly speculative nature and can be distinguished from the case at bar on their facts. Liftin v. Commissioner of Internal Revenue, 36 T.C. 909, also relied on by petitioner, was decided on the basis that the investments which were the subject of the controversy were highly speculative and that the taxpayer's recovery of his cost was uncertain.

In both the Liftin case and in the case at bar, the Tax Court recognized the rule that the time for reporting discount as income turns on the nature of the investment. If it is highly speculative, the taxpayer is permitted to recover his cost before reporting discount income. If he is reasonably certain of recovering his cost, he must report as income each year the proportionate amount of the monthly payment which represents income from the discount on the investment. This rule is in accord with Burnet v. Logan, cited above.

The decision of the Tax Court is affirmed.